IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC., and COSTAR GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BILL JACKSON INC., d/b/a BILL JACKSON & ASSOCIATES, *et al.*, <br><br> Defendants. | Civil Action No. 8:08-cv-2767-RWT |

### COSTAR'S RESPONSE IN OPPOSITION TO DEFENDANTS BILL JACKSON AND HOUSTON PROPERTY CONSULTANTS' MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE

Plaintiffs CoStar Realty Information and CoStar Group, Inc. (collectively, "CoStar"), by their attorneys, submit this Response in Opposition to "Defendants Bill Jackson, Individually, and Houston Property Consultants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion to Dismiss for Improper Venue and Motion to Transfer Venue" (D.E. 16), and to the memorandum of in support thereof (D.E. 17). For the reasons set forth below, defendants' motion should be denied in its entirety.

### INTRODUCTION AND SUMMARY

CoStar's claims against Defendants Bill Jackson, Inc. (d/b/a Bill Jackson & Associates Appraisers ("BJI"), Bill Jackson ("Jackson"), and Houston Property Consultants ("HPC") arise out of CoStar's interest in protecting the copyrighted photographs in its web-based real estate information

1

database – a database that requires a license to access, and for which none of the three defendants had a license. Instead, Jackson, HPC and BJI inappropriately used a usernames and passwords that were attributed to a separate Texas Company, Bolton & Baer Ltd. ("Bolton"), to access CoStar's databases without authorization. Two of the three defendants, Jackson and HPC, have moved to dismiss the Amended Complaint based on an alleged absence of personal jurisdiction and improper venue, and, in the alternative, to transfer this action to the Southern District of Texas. Jackson and HPC's motion should be denied in its entirety. CoStar's allegations and the attached declaration provide a more than ample basis to support the Court's exercise of personal jurisdiction over them (as well as the Court's exercise of personal jurisdiction over Defendant BJI).[1] For the same reasons, this Court is the proper venue for this case and the Court should deny Jackson and HPC's attempt to transfer this case to Texas.

**The Court Has Personal Jurisdiction Over Jackson and HPC:** Personal jurisdiction exists over Jackson and HPC because, as set forth in Paragraphs 4, 9, 19, 22, and 23 of the Amended Complaint, Jackson – the owner of HPC (and Defendant BJI) – and HPC <u>specifically consented to the Court's jurisdiction and the District of Maryland as a venue</u>. When Jackson or one of his employees first logged on to CoStar's website with the user names and passwords he obtained from Bolton, he or she had to click "I Accept" to CoStar's Terms of Use, which contained a forum and venue selection clause and consent to jurisdiction in this Court. *See* D.E. 10, Amended Complaint at ¶¶ 14, 19; *see also* Ex. A, Declaration of Steven J. Williams ("Williams Decl.") at ¶¶ 3-5. It is beyond dispute at this point

---

[1] Defendant BJI has not moved to dismiss the Amended Complaint. Instead, BJI filed a motion to strike the Amended Complaint (D.E. 12, 13), which CoStar opposed (D.E. 15). BJI's motion to strike is currently pending before this Court. BJI did move to dismiss CoStar's original complaint. D.E. 6. The arguments contained in BJI's motion are identical to the arguments contained in Jackson and HPC's motion. To the extent that the Court considers BJI's original motion to dismiss – which it should not based on the filing of the Amended Complaint before a responsive pleading was filed (*see* D.E. 15 (CoStar's Opposition to BJI's Motion to Strike) – that motion should be denied in its entirety for the

that such forum selection clauses are enforceable. *See Koch v. America Online, Inc.*, 139 F. Supp. 2d 690, 693-95 (D. Md. 2000) (enforcing forum selection clause against plaintiff who clicked button on screen labeled "Agree" to indicate agreement with defendant's Terms of Service). Accordingly, the Court has personal jurisdiction over Jackson and HPC.

Moreover, even if Jackson and HPC had not specifically consented to jurisdiction in Maryland as a result of their acceptance of CoStar's Terms of Use, their tortious activity – illegal access to CoStar's password-protected services – occurred in Maryland, where CoStar's computers and Internet servers are located. *See* D.E. 10, Amended Complaint at ¶¶ 1, 2, 8; Ex. A, Williams Decl. at ¶ 6. Thus, under black-letter law providing that jurisdiction lies where a tort is committed and where a defendant has "purposefully directed" its activities towards Maryland, this Court has personal and specific jurisdiction over Jackson and HPC because of their tortious conduct in Maryland. *See, e.g.*, *Cole-Tuve, Inc. v. Amer. Machine Tools Corp.*, 342 F. Supp. 2d 362, 370 (D. Md. 2004); *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692-93 (D. Md. 2002).

**The District of Maryland Is the Proper Venue for this Case:** As noted with respect to the personal jurisdiction of this Court over Jackson and HPC, Jackson and HPC specifically agreed to CoStar's Terms of Use, which selects this Court as the venue for any disputes between the parties. As such, their motion to dismiss for improper venue and their transfer motion should be denied outright. Moreover, even if a full analysis were conducted under the standards of Section 1404(a), the convenience of the parties and the interest of justice strongly favor Maryland as a proper venue for this case.

---

reasons set forth herein.

# FACTUAL BACKGROUND

Headquartered in Maryland, CoStar is a leading, national, commercial real estate information services provider. *See* D.E. 10, Amended Complaint at ¶ 10. This case arises out of the unauthorized access to CoStar databases by Jackson and at least two of the companies he owns, defendants BJI and HPC. Compl. ¶ 4, 20-23; D.E. 16-2 (Affidavit of Bill Jackson ("Jackson Aff.")) ¶¶ 2, 5.

CoStar's suite of proprietary, web-accessed information services help commercial real estate professionals, such as brokers, owners, lenders, appraisers, and REITs, to understand market conditions and identify and evaluate specific opportunities. *Id*. at ¶¶ 10-11. CoStar invests enormous effort and expense in building and maintaining its services, employing a research force of several hundred individuals located in Maryland alone. *See id*. CoStar's computer servers, which host its database, are house in Bethesda, Maryland. Ex. A, Williams Decl. at ¶ 6. CoStar licenses its products to businesses pursuant to written license agreements. D.E. 10, Amended Complaint at ¶¶ 13-14. An "Authorized User" is an individual who is either employed by, or an independent contractor of, a party who has entered into a license agreement with CoStar and who is identified as a user in the license agreement. Ex. A, Williams Decl., Ex. 1 (Terms of Use) at 2; D.E. 10, Amended Complaint at ¶ 13. Authorized Users are provided with user identifications and passwords and are given authorization for internet-based access to CoStar's databases within the terms of the user's specific license. D.E. 10, Amended Complaint at ¶ 14.

When logging on to CoStar's website, users must input a valid user identification and password at the "Subscriber Login Area," which contains prominent notices advising the user that "By logging in you are agreeing to CoStar's terms of use." *Id*. Users must also scroll through and "accept" the applicable online Terms of Use the first time that they use the product as well as at periodic intervals

thereafter. *Id*. Furthermore, a warning appears at the bottom of the CoStar homepage that reads: "By using this site, you agree to our Terms of Use." *Id*. By clicking on the underlined phrase, the user can view the Terms of Use. *Id*.

The Terms of Use contain the definition of an "Authorized User," that is, an individual who is identified in a license agreement between CoStar and another party. Ex. A, Williams Decl., Ex. 1 (Terms of Use) at 2. It is undisputed that, unlike Bolton, who did have a license agreement with CoStar, neither Jackson, HPC, or BJI had a license agreement with CoStar. *See* Jackson Aff. ¶¶ 6, 7. Thus, any accesses to CoStar's protected databases by Jackson or HPC with the usernames and passwords he obtained from Bolton were not authorized under the provisions of the Terms of Use.

Jackson does not deny that he used CoStar's services with the password he obtained from Bolton. D.E. 16-2, Jackson Aff. ¶¶ 5, 7. Indeed he admits (D.E. 16-2, Jackson Aff. ¶¶ 5, 7) that HPC made "occasional" inquiries of CoStar's commercial real estate database with alleged "authorization" from Bolton (*i.e.*, authorization that Bolton was not authorized to provide under the terms of the license agreement (*see* D.E. 10, Amended Compl. ¶¶ 12-13)). Furthermore, CoStar keeps internal records of each log-in session made to its products. Ex. A, Williams Decl. at ¶ 4. CoStar's records show that Jackson, and/or an employee of one of his companies, using usernames and passwords assigned to Bolton, logged on to CoStar's website 183 times, spending 61.73 hours online with over 25,939 page hits. Ex. A, Williams Decl. at ¶ 5; Ex. 2 (record of log-ins).

As alleged in the Amended Complaint, in order to access CoStar's services, Jackson and HPC were required to indicate their acceptance of CoStar's Terms of Use when they first logged into CoStar's website, as well as at periodic intervals thereafter. *See id*. at ¶¶ 14, 15. Moreover, each subsequent time Jackson and HPC logged into CoStar's website, they were presented with a prominent notice advising

him that "By using this site, you are agreeing to CoStar's terms of use." *Id*. ¶ 14. CoStar's Terms of Use provide that the user "irrevocably consent[s] to the jurisdiction of the federal and state courts located in the State of Maryland . . . for any action brought against you in connection with these Terms of Use or Use of the Product.." Ex. A, Williams Decl., Ex. 1 (Terms of Use) at 11.

## LEGAL STANDARDS

1. **Personal Jurisdiction.** A federal district court may exercise personal jurisdiction over a non-resident defendant where an applicable state long-arm statute confers jurisdiction and the assertion of that jurisdiction is consistent with constitutional due process. *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 768 (D. Md. 2004) (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)). Because the Maryland legislature designed its long-arm statute to extend personal jurisdiction to the limits allowed by federal due process, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Ciena Corp. v. Jarrard*, 203 F.3d 312, 317 (4th Cir. 2000) (citation and quotations omitted). Under the due process clause of the Fourteenth Amendment, defendants are subject to a Court's jurisdiction if they have had sufficient minimum and purposeful contacts with Maryland that gave rise to the suit. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985).

"When the Court rules on a motion to dismiss for lack of personal jurisdiction without the benefit of an evidentiary hearing, the plaintiff's burden is 'simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.' The Court, however, must construe all relevant pleadings and inferences in favor of the plaintiff." *Baker & Kerr, Inc. v. Brennan*, 26 F. Supp. 2d 767, 769 (D. Md. 1998) (Williams, J.).

## 2. Proper Venue/Motion to Transfer Venue.

Venue for claims asserted under the Copyright Act is proper in the district where the defendant "may be found." 28 U.S.C. § 1400(a). It is "widely accepted that a defendant is found within the meaning of Section 1400(a) wherever the defendant is . . . subject to personal jurisdiction." Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 15 *Federal Practice and Procedure* § 3819 (2008). Moreover, an action in which jurisdiction is based upon federal question jurisdiction may be brought in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

The standards for transfer under § 1404 are: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Mamami v. Sanchez de Lozada Sanchez Bustamante*, 2008 WL 1752985 at *2 (D. Md. Apr. 15, 2008) (citing *Dow v. Jones,* 232 F. Supp. 2d 491, 499 (D. Md. 2002)). In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Id*. (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). Specifically, courts consider the balance of the following factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice. *Cross v. Fleet Reserve Ass'n Pension Plan,* 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citation omitted). However, unless the balance of factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight Inc.,* 748 F.2d 916, 921 (4th Cir. 1984). The decision whether

to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Centers, Inc.,* 933 F.2d 1253, 1257 (4th Cir. 1991).

## ARGUMENT

**I. Personal Jurisdiction Over Jackson and HPC Is Appropriate Because They Consented to Jurisdiction in Maryland and Because They Directed Their Tortious Activity at Maryland**

**A. As Set Forth in the Amended Complaint, Jackson and HPC Have Consented to This Court's Jurisdiction**

As CoStar alleges in its Amended Complaint, Jackson and HPC have specifically consented to the Court's jurisdiction over them by their acceptance of CoStar's online Terms of Use, which contains a forum selection clause. A similar forum selection clause, like other forum selection clauses, has been specifically upheld in this District as a valid basis for asserting jurisdiction and should once again be enforced to allow the Court to exercise personal jurisdiction over Jackson and HPC. *See* Ex. B, Transcript of Hearing Before Judge Messitte, *CoStar Realty Information, Inc. v. Atkinson Hunt*, Case No. PJM 06-655 (August 28, 2006) ("Atkinson Tr.") at 37-44.

There is no question that Jackson and HPC have agreed to CoStar's online Terms of Use. Each person who uses a CoStar user name and password on CoStar's website for the first time is presented with a copy of CoStar's online Terms of Use and is asked to click "I Accept" to those terms before using CoStar's service. D.E. 10, Amended Complaint at ¶ 13; Ex. A, Williams Decl. ¶ 3. Furthermore, each user is periodically required to click "I Accept" to CoStar's Terms of Use, further indicating his or her assent. *See id*. CoStar's records show that Jackson or one of his employees logged on to CoStar's website on at least 183 occasions for a total of 61.73 hours, involving "hits" to 25,939 pages on the CoStar website and accordingly would have had to indicate his or her acceptance to CoStar's Terms of Use. Ex. A, Williams Decl. at ¶¶ 4-5; *see also id*. at Ex. 2 (record of log-ins). The kind of assent that

Jackson and HPC would have had to have made to use CoStar's services is sufficient for the purposes of Maryland contract law. *See Koch v. America Online, Inc.*, 139 F. Supp. 2d 690, 693-95 (D. Md. 2000).

Given Jackson's and HPC's acceptance of CoStar's Terms of Use, the Court's personal jurisdiction over Jackson and HPC naturally follows. The Terms of Use state:

> **Jurisdiction**
>
> CoStar is headquartered in the State of Maryland of the United States. These Terms of Use and your use of this Product shall be governed by the laws of the State of Maryland without regard to its conflicts of laws principles. The federal and state courts located in the State of Maryland shall be the exclusive jurisdiction for any action brought against CoStar in connection with these Terms of Use or use of the Product. You irrevocably consent to the jurisdiction of the federal and state courts located in the State of Maryland, and to the jurisdiction of the federal and state courts located in any State where you are located, for any action brought against you in connection with these Terms of Use or use of the Product. . . .

Ex. A, Williams Decl. at Ex. 1 (Terms of Use) at 11. It cannot be disputed at this point that a forum selection clause like this is valid and an appropriate basis upon which this Court can exercise personal jurisdiction. *See Koch*, 139 F. Supp. 2d at 692-95 (enforcing forum selection clause contained in AOL's online terms of service to which party clicked "agree"); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) ("[a] valid forum selection clause [should be] given weight in all but the most exceptional cases") (Kennedy, J., concurring); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection clauses "are prima facie valid and should be enforced . . ."); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (noting that the "Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity"). Indeed, Judge Messitte found jurisdiction over a defendant based on essentially identical allegations involving CoStar's Terms of Use. *See* Ex. B, Atkinson Tr. at 38-39.

Jackson and HPC attempt to argue that the clause should not be enforced because it is buried in a

form contract. D.E. 17 at 5. Their argument fails. The use of a form contract, "even by a party with superior bargaining power, does not necessarily make a forum selection clause unenforceable." *Koch*, 139 F. Supp. 2d at 695 (citing, inter alia, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991)). The general principle is that forum selection clauses are enforceable unless they are unreasonable. *M/S Bremen*, 407 U.S. at 10. Jackson and HPC's assertions of inconvenience are not sufficient to meet their "heavy burden of proof" to show that they would be so gravely inconvenienced that enforcement of the clause would be unreasonable. *Carnival Cruise Lines*, 499 U.S. at 594 (citing *M/S Bremen*, 407 U.S. at 17). And in any event, any inconvenience Jackson has shown does not outweigh the interest that CoStar, a company that maintains a national database, has in avoiding being subject to suit in all 50 states. *See Carnival Cruise Lines*, 499 U.S. at 595; *see also Koch*, 139 F. Supp. 2d at 694 (citing *Carnival Cruise Lines*).

Jackson and HPC's argument that the clause was difficult to see or find also fails. The login page through which Jackson would have passed through to sign on to the CoStar website contained prominent notices that the user was agreeing to the Terms of Use, the text of the Terms of Use was available by clicking the underlined phrase "Terms of Use," and the jurisdiction clause is clearly labeled with the term "Jurisdiction" in bold.[2] D.E. 10, Amended Complaint ¶ 14; *see also* Ex. A, Williams Decl. ¶ 3, Ex. 1 (Terms of Use) at 11.

Because Jackson and HPC do not provide the Court with any reason not to honor the forum selection clause of CoStar's Terms of Use, the clause should be honored and their motion should be

---

[2] Jackson and HPC's representation that CoStar alleges that the user consents to the "exclusive" jurisdiction of the federal and state courts of Maryland is incorrect. D.E. 17 at 4. In fact, CoStar's allegations do not contain the term "exclusive." Instead, CoStar alleges that the Terms of Use provide that the user simply "irrevocably consents" to the jurisdiction of the Maryland state and federal courts. D.E. 10, Amended Complaint ¶ 19; Ex. A, Williams Decl., Ex. 1 at 11.

denied.

> **B.      Personal Jurisdiction Over Jackson and HPC Is Appropriate Because They Have Committed Tortious Acts In Maryland and Have Purposefully Directed Their Tortious Conduct at Maryland**

Even if there were some reason not to enforce the forum selection clause – which, as discussed above, there is not – the Court should still find that it may exercise personal jurisdiction over Jackson and HPC. It is undisputed that a federal district court may exercise personal jurisdiction over a non-resident defendant where an applicable state long-arm statute confers jurisdiction and the assertion of that jurisdiction is consistent with constitutional due process. *Stratagene*, 315 F. Supp. 2d at 768. Jackson and HPC's contacts with Maryland are such that at all times relevant to this case they should have reasonably anticipated being haled into court here. *Id.* (citations omitted).

Jackson and HPC should not be permitted to claim that they had no reason to believe that Jackson's conduct implicated Maryland jurisdiction. Maryland's long-arm statute confers specific jurisdiction, among other things, where a party transacts business in the state or causes tortious injury in the state. Md. Code Ann. § 6-103(b)(1), (3) and (4). Here, Jackson and HPC entered into a contract with CoStar (the Terms of Use) and Jackson knew he was using CoStar's computers, which are, quite naturally, located in Maryland with CoStar. *See* Ex. A, Williams Decl. at ¶ 6.

As the Court is aware, the fact that a defendant has never set foot in a jurisdiction is not a determining factor in a court's exercise of personal jurisdiction. *Burger King*, 471 U.S. at 476. Rather, the question is whether Jackson and HPC has directed their activities at forum residents such that he would have fair warning that he might be subject to the forum's jurisdiction. *Id*. at 472 (citations omitted); *Cole-Tuve*, 342 F. Supp. 2d at 370 (foreign defendants who intentionally harm residents of the forum state subject to personal jurisdiction); *Giannaris*, 219 F. Supp. 2d at 692-93 ("strongest factor" in

deciding whether personal jurisdiction is based upon business activities directed at forum residents is whether defendant initiated contact with forum residents).

Here, there is little question that Jackson and HPC directed their tortious activities at Maryland. Jackson and HPC improperly accessed CoStar's Maryland computer servers and directed their improper conduct at CoStar, which is headquartered in Maryland and which suffered damages in Maryland due to their conduct. Ex. A, Williams Decl. ¶ 6. Jackson and HPC transacted business in Maryland through their acceptance of the Terms of Use on CoStar's website, which formed a contract with CoStar each time they accessed the website. D.E. 10, Amended Complaint ¶ 14-15. Furthermore, Jackson and HPC's unauthorized use of CoStar's website was intended to cause tortious injury to CoStar in Maryland. Finally, exercise of personal jurisdiction is further supported because of the direct connection that exists between Jackson and HPC's Maryland-related activities and CoStar's claims. *See Cole-Tuve*, 342 F. Supp. 2d at 361. Thus, there are ample reasons to exercise personal jurisdiction over Jackson and HPC with regard to this lawsuit. *Giannaris*, 219 F. Supp. 2d at 693; *Cole-Tuve*, 342 F. Supp. 2d at 361.

Jackson and HPC appear to argue that their activities constitute the passive transmission of electronic signals over the Internet, which they argue is not sufficient to subject them to personal jurisdiction in Maryland under the Fourth Circuit's decision in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002). D.E. 17 at 5-6. But Jackson and HPC's argument fails for the same reasons set forth above – their activities did not constitute mere passive transmission of electronic signals. Rather, Jackson and HPC (1) directed their activities into Maryland through their unauthorized, repeated use of CoStar's services and through their acceptance of CoStar's Terms of Use each time they logged on to CoStar's website and (2) intended to engage in business or interactions with CoStar, which is headquartered in Maryland and whose servers are located in Maryland. *ALS Scan*, 293

F.3d at 714; *see also Cole-Tuve*, 342 F. Supp. 2d at 368-69 (citing *ALS Scan*). In sum, the allegations of CoStar's Amended Complaint, the facts set forth in the accompanying Williams Declaration, and the admission by Jackson in his affidavit that HPC used CoStar's services, are sufficient to support the exercise of jurisdiction over Jackson and HPC.

## II. This Court Is the Proper Venue for this Case

### A. Venue is Proper in Maryland

Contrary to Jackson and HPC's contention, venue is proper in Maryland, and this case should not be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3). As an initial matter, venue for claims asserted under the Copyright Act is proper in the district where the defendant "may be found." 28 U.S.C. § 1400(a). It is "widely accepted that a defendant is found within the meaning of Section 1400(a) wherever the defendant is . . . subject to personal jurisdiction." Wright, *et al.*, 14D *Federal Practice and Procedure* § 2819. Because, as explained above, exercise of personal jurisdiction in Maryland over Jackson and HPC is proper, venue is also proper in Maryland for all the same reasons set forth above. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1097 (C.D. Cal. 2003). Moreover, an action, such as this one, in which jurisdiction is based upon federal question jurisdiction, may be brought in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2); *see Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085, 1094 (N.D. Cal. 2003) (holding venue for copyright claim was proper under § 1391(b)). That Jackson, HPC, and BJI are physically located in Texas is not determinative – the illegal access to CoStar's password-protected services and copyrighted photographs occurred in Maryland, where

CoStar's computers and internet servers are located. *See* Ex. A, Williams Decl. ¶ 6. Venue is therefore proper in this Court, and this case should not be transferred or dismissed on venue grounds.[3]

### B. Jackson and HPC's Motion for a Venue Transfer Should Be Denied Because This District Is the Most Appropriate Forum to Litigate This Action

Jackson and HPC's motion for a transfer of venue should be denied because the factors considered under § 1404 weigh decidedly against transfer. *Dow*, 232 F. Supp. 2d at 499 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) ("[U]nless the balance is strongly in favor of transfer, the plaintiff's choice of forum will rarely be disturbed."). In weighing whether to transfer under § 1404, courts consider: "1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice." *Cross*, 383 F. Supp. 2d at 856 (citing *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615 (D. Md. 2002)).

#### 1. The Forum Selection Clause of the Terms of Use Mandates That This Case Be Heard in Maryland.

As noted in detail above, Jackson and HPC specifically consented to the jurisdiction of the state and federal courts of Maryland by accepting CoStar's Terms of Use. Accordingly, Jackson and HPC's motion to transfer should be denied on the ground that the existence of the forum selection clause waives any right they would have to challenge the convenience of Maryland as a forum. *See, e.g.*, *Capital Source Finance, LLC v. Delco Oil, Inc.*, 2007 WL 3119775, *10-11 (D. Md. Sep 17, 2007); *Davis Media Group, Inc v. Best Western Intl., Inc.*, 302 F. Supp. 2d 464, 470 (D. Md. 2004) (enforcing forum selection clause in context of motion to transfer venue to protect the parties' legitimate expectations).

---

[3] It is CoStar's position that venue for a claim arising under the Copyright Act is proper under both 28 U.S.C. § 1391, as it alleges in its Amended Complaint (¶ 8), and under 28 U.S.C. § 1400(a). If the Court wishes, CoStar can readily submit an amended complaint that includes 28 U.S.C. § 1400(a) as an

### 2. CoStar's Choice of Forum Is Entitled to Substantial Weight.

A plaintiff's choice of forum is entitled to substantial weight by a court in determining whether transfer is appropriate under § 1404. *Cross*, 383 F. Supp. 2d at 856. This is especially true where, as here, events giving rise to the litigation took place in the forum. *Cole-Tuve*, 342 F. Supp. 2d at 370 (plaintiff's choice of forum accorded "considerable weight" where defendant's online activities giving rise to litigation affected plaintiff's business in Maryland). Here, Jackson's and HPC's unlawful use of CoStar's services directly affected CoStar's business in Maryland requiring that substantial deference be given to CoStar's choice of forum.

### 3. The Inconvenience to CoStar, its Witnesses, and Other Parties Weighs against Transfer.

Also to be considered by the Court in determining whether to transfer is the convenience of the parties and the witnesses. CoStar and its witnesses will suffer inconvenience if required to travel to the Southern District of Texas to litigate this case. As detailed in the Declaration of Steve Williams, CoStar and all the witnesses that may testify in this litigation reside in Maryland and will be inconvenienced by litigation in Texas. *See* Ex. A, Williams Decl. at ¶ 6; *Cole-Tuve*, 342 F. Supp. 2d at 370 (courts will not impose burden of litigating in an different forum upon a plaintiff where only connection with proposed transferee forum is that defendants reside there). At the very least, the convenience issue is "a wash" between the parties which weighs in favor of keeping this case in Maryland. *Choice Hotels Intl., Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998) (denying transfer and reasoning that "there has been no substantial showing by defendant that a transfer . . . would do anything other than shift the greater burden and inconvenience of trial from defendants to plaintiffs, which is not a proper purpose of a transfer of venue.").

---

additional basis for venue.

Finally, out of respect for convenience to Jackson, CoStar is willing to offer to take any deposition of Jackson near his place of business.

### 4. The Interests of Justice Weigh Against Transfer.

Courts also look to the interests of justice on a § 1404 motion which encompasses "'all those factors bearing on transfer that are unrelated to convenience of witnesses and parties.'" *Cross*, 383 F. Supp. 2d at 857 (quoting *Sheet Metal Workers Fund v. Baylor Heating and Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988)). These factors include, as is relevant here, a court's familiarity with applicable law, the possibility of an unfair trial or harassment, ease of access to sources of proof and court congestion. *Id.*; *Baylor Heating and Air Conditioning*, 702 F. Supp. at 1260. Weighing these factors, it is plain that transfer is not warranted.

First, the parties' agreement calls for application of the state law of this forum – Maryland law. Second, there is no allegation that Jackson and HPC will receive an unfair trial or be harassed by litigating in Maryland. Third, this case centers around CoStar's database services and its contract with Jackson and HPC, all of which are located in and administered in Maryland. As such, many of the relevant documents are to be found in Maryland. *See* Ex. A, Williams Decl. at ¶ 6. The interests of justice weigh heavily against transfer.

### C. This Case Should Not Be Transferred Under the First-Filed Rule

Jackson and HPC argue that the claims in this case are "materially related" to the claims in a case brought against CoStar by Jackson and BJI in the Southern District of Texas and that this action should be transferred to that court under "first-filed" rule. D.E. 17 at 11-12. Under the first-filed rule, there is a presumption that, when parties have instituted competing or parallel litigation in two federal courts, the court that was the first to have jurisdiction should hear the case. *See Ellicot Machine Corp v. Modern*

*Welding Co., Inc.*, 502 F.2d 178, 180, 180 n. 2 (4th Cir. 1974) (recognizing first-to-file rule). As an initial matter, Jackson and HPC disingenuously imply that the Texas court has "already retained jurisdiction" over their case. D.E. 17 at 12. But the Texas court has <u>not</u> "retained jurisdiction" – CoStar's motion to dismiss Jackson and BJI's Amended Complaint remains pending before that court. Ex. C (CoStar's motion to dismiss Jackson and BJI's Texas complaint). Jackson and HPC further argue that, by transferring this case to Texas, this Court would "avoid the question of personal jurisdiction." D.E. 17 at 13. However, as discussed above, the jurisdictional issues in this case are straightforward – Jackson and HPC consented to jurisdiction in this Court when they repeatedly accepted the Terms of Use, and jurisdiction also exists over both defendants under the traditional jurisdictional analysis. Therefore, the jurisdiction of this Court is not in question.

Finally, Jackson and HPC should not be permitted to rely on their Texas case – which is primarily based on a claim under the Texas Debt Collection Practices Act – because the timing of the filing of their complaint strongly suggests that they improperly filed the Texas action for forum-shopping purposes in anticipation of litigation. Specifically, Jackson and BJI filed their complaint in Texas state court on July 15, 2008 (D.E. 16-5 at 11), just a few weeks after receiving the initial correspondence from CoStar (D.E. 16-3). Moreover, Jackson and HPC did not serve CoStar – or even inform CoStar that a complaint had been filed – until November 4, 2008 (Ex. D (summonses returned executed in Texas case)), which was after the parties had been negotiating for months and *after* CoStar had filed this case before this Court on October 20, 2008 (D.E. 1). The first-filed rule is not to be applied "mechanically." *PBM Products, Inc. v. Mead Johnson & Co.*, 2001 WL 841047 at *2 (E.D. Va. Apr. 4, 2001) (citations omitted). An exception to the first-filed rule is "when the district of the first-filed suit appears to have been selected based on forum-shopping, anticipatory conduct, or when other

17

special circumstances justify giving priority to the second action." Wright, *et al.*, 15 *Federal Practice and Procedure* § 3854; *see also id.* n. 12 (citing cases). That exception applies here. Jackson and HPC's Texas complaint is no more than an improper attempt at forum-shopping, and Jackson and HPC's transfer motion should not be granted based on the pendency of the Texas action. *See PBM Products*, 2001 WL 841047 at *2; Wright, *et al.*, 15 *Federal Practice and Procedure* § 3854.

## CONCLUSION

For the foregoing reasons, CoStar respectfully requests that Jackson and HPC's motion to dismiss or, in the alternative, for a venue transfer pursuant to 28 U.S.C. § 1404 be denied.

Dated: January 26, 2009

Respectfully submitted,

/s/
Shari Ross Lahlou, Bar. No. 16570
William J. Sauers, Bar No. 17355
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: slahlou@crowell.com
wsauers@crowell.com

*Attorneys for Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that service required by Fed. R. Civ. P. 5 was made, and that a true copy of the above document was served upon the attorneys of record by electronically filing the document with the Clerk of Court using the CM/ECF system, which caused a Notice of Electronic Filing (NEF) to be sent to the following on January 26, 2009:

Eugene W. Policastri
401 N. Washington St., Suite 500
Rockville, MD 20850
Phone: (301) 251-6200
Fax: (301) 309-9436
ewpolicastri@brsglaw.com

*Attorneys for Defendants*


        /s/
William J. Sauers, Bar No. 17355
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: wsauers@crowell.com

*Attorneys for Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc.*